Cont'l Indus. Grp. v. Altunkilic

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of October, two thousand nineteen.

PRESENT:  BARRINGTON D. PARKER,
　　　　　REENA RAGGI,
　　　　　RAYMOND J. LOHIER, JR.,
　　　　　　　　*Circuit Judges*.

_____

CONTINENTAL INDUSTRIES
GROUP, INC.,
　　　　　　　　*Plaintiff-Appellant*,

　　　　　v.　　　　　　　　　　　　　　　　　　No. 18-1239-cv

MEHMET ALTUNKILIC,
　　　　　　　　*Defendant-Appellee.*

_____

APPEARING FOR APPELLANT:　　Michael T. Conway, Offitt Kurman, P.A., New York, New York.

FOR APPELLEE:　　　　　　　No appearance.

Appeal from a judgment of the United States District Court for the Southern District of New York (Analisa Torres, *Judge*; James L. Cott, *Magistrate Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on May 21, 2018, is AFFIRMED in part, VACATED in part, and REMANDED.

Plaintiff Continental Industries Group, Inc. ("CIG") appeals from the district court's dismissal of its complaint for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6), consistent with the report and recommendation of a magistrate judge (Cott, *M.J.*). CIG challenges the magistrate judge's authority to review the sufficiency of the complaint following the entry of a default judgment and a referral for an inquest on damages. It further challenges the district court's determination that the complaint failed to state a cognizable claim. We review *de novo* the dismissal of a complaint for failure to state a claim, construing the pleadings in the light most favorable to the plaintiff. *See Dettelis v. Sharbaugh*, 919 F.3d 161, 163 (2d Cir. 2019). "A formulaic recitation" of the claims' elements "will not suffice" to state a claim. *In re Facebook, Inc. Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 159 (2d Cir. 2015). Rather, the complaint must contain sufficient factual matter "plausibly to give rise to an entitlement to relief." *Dettelis v. Sharbaugh*, 919 F.3d at 163. In applying this standard here, we assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to vacate in part and remand.

I.     Magistrate Judge's Authority

A district court is empowered to evaluate the sufficiency of allegations before awarding damages in a default judgment. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). Pursuant to that authority, it can seek a recommendation on sufficiency from a

2

magistrate judge, preliminary to the magistrate judge making a recommendation as to damages. *See* 28 U.S.C. § 636(b)(1)(B) (permitting district court to "designate a magistrate judge" to "submit . . . proposed findings of fact and recommendations for the disposition" of a motion). In such circumstances, it might be clearer for all parties if the district court were to notice default, rather than to enter a default judgment as was done here. While both a notice of default and a default judgment deem the complaint's factual allegations admitted, a default judgment generally signals recognition of the defaulting party's liability. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (explaining that "entry of a default judgment[] converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled"); *Swarna v. Al-Awadi*, 622 F.3d 123, 140 (2d Cir. 2010) (explaining difference between default judgment and notice of default). We need not pursue this issue, however, because whether or not the magistrate judge was authorized to make a sufficiency recommendation here, any error was necessarily harmless because CIG had the opportunity to object to the recommended dismissal before the district court, which was obliged to review that question of law *de novo*. *See* 28 U.S.C. § 636(b)(1) (explaining that district court "shall make a de novo determination of those portions of the . . . recommendation[] to which objection is made"); *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). Thus, CIG's argument that it was denied notice and a fair opportunity to be heard on the sufficiency of its claims fails on the merits.

3

II.    Sufficiency of Pleadings

    a.  Misappropriation of Trade Secrets and Proprietary Information

To state a claim for trade secret misappropriation under New York law—which governs the claims at issue here—the plaintiff must allege "(1) that it possessed a trade secret, and (2) that the defendant[] used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *North Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir. 1999). To determine whether information constitutes a trade secret, courts consider

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Id.* at 44.

Following the magistrate judge's recommendation, the district court held that CIG failed adequately to plead that the alleged trade secrets—including a cost analysis sheet, customer and supplier lists, pricing and payment terms, shipping information, customer product mixes, employee data, and identities of banks and officers providing trade financing terms and conditions—were, in fact, secret. On *de novo* review, we cannot agree. Much of the information alleged is routinely afforded trade secret protection. *See Jasco Tools, Inc. v. Dana Corp. (In re Dana Corp.)*, 574 F.3d 129, 152 (2d Cir. 2009) (holding that "[c]onfidential proprietary data relating to pricing, costs, systems, and methods are

4

protected by trade secret law"); *North Atl. Instruments, Inc. v. Haber*, 188 F.3d at 44 (explaining that customer lists are protectible as trade secrets when the "list [is] developed by a business through substantial effort and kept in confidence[,] . . . provided the information it contains is not otherwise readily ascertainable" (internal quotation marks omitted)). Thus, we conclude that CIG identified the trade secrets at issue with sufficient specificity that it is certainly plausible that the information identified was, in fact, secret. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In sum, CIG's allegations were not so "threadbare" as to compel dismissal.

We reach a similar conclusion as to CIG's pleading that Altunkilic was duty bound to protect CIG's trade secrets and proprietary information. Although Altunkilic was employed by Continental Kimya Sanayi Ve Dis Tic. A.S. ("CKS"), not CIG, because CKS was the exclusive distributor of CIG's products in Turkey, it was plausible to allege that Altunkilic, as CKS's general manager, was entrusted with information regarding CIG's customers, suppliers, and proprietary information for the limited purpose of distributing CIG products through CKS, and that his personal use of the information for his own benefit was a breach of duty. *See North Atl. Instruments v. Haber*, 188 F.3d at 47–48. In sum, these factual allegations about the exclusive distributor relationship "nudge[]" CIG's claim— that Altunkilic owed a duty to protect CIG's trade secrets and proprietary information— "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. at 680 (internal quotation marks omitted).

b. <u>Tortious Interference with Contract and Prospective Economic Advantage</u>

Similarly, CIG's claims for tortious interference with a contract and prospective

5

economic advantage are alleged plausibly.

To plead tortious interference with a contract under New York law, CIG had to allege (1) a valid contract, (2) defendant's knowledge of the contract, (3) defendant's intentional and improper procurement of a breach of the contract, and (4) damages. *See Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996). On the first element, the district court faulted CIG for not providing copies of or summarizing any agreement. The omission does not compel dismissal, however, if the complaint otherwise makes the existence of a contract plausible. *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). CIG alleges that it maintained supplier agreements, and CIG supported that assertion by specifically identifying CIG suppliers with whom defendant interfered. The defendant having defaulted, these allegations are deemed admitted and, thus, are sufficient plausibly to plead the existence of the contracts interfered with.

As to the remaining elements, the complaint plausibly alleges Altunkilic's awareness of CIG's contracts in his capacity as CKS's general manager for the exclusive distribution of CIG products in Turkey. Further, the complaint alleges that Altunkilic, together with CIG employee Ustuntas, procured the breach of these contracts in order to benefit competing companies in which they held a financial interest, Plasmar and Marchem. The allegation is plausible, and Altunkilic concedes its truth by his default. In sum, these allegations are sufficient to state a plausible claim of tortious interference with contracts.

The same conclusion obtains as to tortious interference with prospective economic advantage. To state such a claim, CIG must plead (1) its business relations with a third

6

party, (2) defendant's interference with those relations, (3) defendant's wrongful action or use of dishonest, unfair, or improper means, and (4) ensuing injury to the relationship. *See Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008). While the district court faulted CIG for insufficiently alleging third-party business relations, the conclusion fails for the same reasons that CIG sufficiently pleaded the existence of third-party contracts.

c. <u>Aiding and Abetting Breach of Fiduciary Duty</u>

The district court also found insufficient CIG's pleading that Altunkilic assisted CIG employee Ustuntas in breaching his duty of loyalty because the complaint does not show that Altunkilic did so knowingly. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006) (explaining that aiding and abetting breach of fiduciary duty requires that defendant knowingly induced or participated in breach). Although CIG does not specifically state that Altunkilic was aware of Ustuntas's fiduciary duty, the complaint makes an inference of such knowledge plausible. CIG alleges that as general manager of CKS, Altunkilic worked closely with CIG employee Ustuntas. The complaint further alleges that together, Altunkilic and Ustuntas used CIG's confidential and proprietary information to solicit CIG's suppliers and customers, and that they also induced CIG employees to breach their employment agreements. Altunkilic's relationships with CIG and Ustuntas, and Altunkilic's knowledge that Ustuntas was employed by CIG, make plausible Altunkilic's awareness that Ustuntas owed CIG a duty of loyalty regarding such matters.

7

### d. Usurpation of Corporate Opportunity

The district court dismissed CIG's claim for usurpation of a corporate opportunity on grounds that (1) CIG has not shown a fiduciary relationship between it and Altunkilic, and (2) CIG did not show a tangible expectancy in the corporate opportunity at issue— purchasing shares in Plasmar and Marchem. We have already discussed the first ground, and conclude that CIG has plausibly alleged that Altunkilic owed CIG a fiduciary duty. Indeed, the district court acknowledged that "the complaint pleaded facts that could potentially suggest a fiduciary relationship." *Continental Indus. Grp., Inc. v. Altunkilic*, No. 14-cv-790, 2018 WL 1508566, at *7 (S.D.N.Y. Mar. 27, 2018).

Like the district court, we conclude that CIG has failed sufficiently to plead the requisite tangible expectancy in acquiring Plasmar or Marchem. *See Abbott Redmont Thinlite Corp. v. Redmont*, 475 F.2d 85, 89 (2d Cir. 1973) (holding existence of "tangible expectancy" depends on "degree of likelihood" that party would "realiz[e]" opportunity (internal quotation marks omitted)). CIG has not alleged facts suggesting that it had an expectancy or interest in acquiring either Plasmar or Marchem. It alleges that "Marchem is a shell company with no employees and no capital"; thus, it is not clear that CIG would have any interest in acquiring Marchem. Compl. ¶ 19. CIG alleges that Plasmar was its customer, but it does not allege that CIG took any steps to invest in Plasmar, or that it had ever acquired customers in the past. Thus, the claim was correctly dismissed as insufficient.

### e. Remaining Claims

CIG's claims for constructive trust, unjust enrichment, unfair competition, and conversion were also correctly dismissed. Imposition of a constructive trust is a remedy for

8

the diversion of a corporate opportunity. *See Poling Transp. Corp. v. A & P Tanker Corp.*, 84 A.D.2d 797, 796, 443 N.Y.S.2d 895, 897 (2d Dep't 1981). As CIG has not sufficiently alleged Altunkilic's usurpation of a corporate opportunity, there is no need for a constructive trust.

CIG's claims for unjust enrichment, unfair competition, and conversion merely duplicate CIG's other claims and, accordingly, should be dismissed. *See, e.g.*, *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 740 (2012) (explaining that "unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim").

We have considered CIG's remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the district court is AFFIRMED in part insofar as it dismissed plaintiff's claims for usurpation of corporate opportunity, constructive trust, unfair competition, and conversion. The judgment is VACATED in part insofar as it dismissed plaintiff's claims for misappropriation of trade secrets and proprietary information, tortious interference with contract and prospective economic advantage, and aiding and abetting breach of fiduciary duty. The case is REMANDED with directions to reinstate these claims and to award plaintiff such damages as are warranted thereon in light of defendant's default.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court